IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**BRANDON WAYNE THOMAS,**

Petitioner,

v.                                    CIVIL ACTION NO.  2:19cv479

**HAROLD W. CLARKE, Director,**
**Virginia Department of Corrections,**

Respondent.

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Brandon Wayne Thomas's ("Petitioner") *pro se* Petition for a Writ of Habeas Corpus ("the Petition") filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and Respondent Harold W. Clarke's ("the Respondent") Motion to Dismiss, ECF No. 10. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges.  The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J).  For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 8, be **GRANTED** and the Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the Circuit Court for County of Chesterfield, Virginia ("the Trial Court"), following a jury trial, Petitioner was convicted of first-degree murder and use of a firearm in the commission of a felony. ECF No. 1 at 1. Petitioner was represented at trial by a team of three attorneys, including David P. Baugh ("Trial Counsel/Defense Counsel"). ECF No. 10, attach. 5 at 13 n. 5. On appeal, Petitioner was represented by Joan J. Burroughs. ECF No. 10, attach. 1 at 39. On or about December 5, 2014, Petitioner was sentenced to forty-three years' imprisonment. ECF No. 1 at 1. The factual findings of the Court of Appeals of Virginia provide the following summary of the evidence presented at trial:

> [Thomas] and [Bobbie Jo] Bell were involved in a paternity and child support dispute regarding Bell's children. [Thomas] was concerned about the dispute and his financial obligations. By September 9, 2010, he had formed a plan to kill Bell. Bell and [Thomas] were to meet the evening of September 10 at Bell's trailer, as Bell understood, to discuss child support arrangements. Sometime that evening or around midnight, [Thomas] fired a single shot to Bell's head, killing her.
>
> Ample direct and circumstantial evidence supported the [guilty] verdict. Don Vanstory's testimony, [Thomas's] admissions, and forensic evidence most clearly established [Thomas] as the one who committed the offenses. On September 9, [Thomas] met with Vanstory, his friend, and described his plan to murder Bell on account of the paternity dispute. After losing communication with [Thomas], Vanstory saw [Thomas] on the morning of September 11. [Thomas] admitted that he had shot and killed Bell. [Thomas] told Vanstory that he [had] discarded the gun in a lake next to an apartment complex where he used to live. Vanstory eventually gave this information to investigators, who searched two lakes next to the apartment complex and, in December 2012, found a .380 Hi-Point pistol. [Thomas] was known to have had a .380 Hi-Point pistol before Bell's death. Testing revealed that the gun found in the lake was the one used to kill Bell. DNA linked to [Thomas] was also recovered from a pillow found next to Bell's body. Further, the jury heard evidence that, when he first spoke to the police on September 12, [Thomas] claimed that he had cancelled plans to see Bell the evening of September 10 and, instead, remained with Vanstory. Evidence contradicted this statement and permitted the jury to "infer that the accused [was] lying to conceal his guilt."

ECF No. 10, attach. 2 at 8-10.

Petitioner timely appealed his convictions to the Court of Appeals of
Virginia on the following grounds:

(1) The trial court erred by not allowing defense counsel to fully
question Detective Williams about why he failed to follow up on information
provided by an eyewitness, and this decision deprived Thomas of a fair trial
pursuant to the Confrontation clause of the 6th amendment to the U.S.
Constitution;

(2) The trial court erred by instructing the jury that every person
intends the natural and probable consequences of their actions, where such
instruction creates impressible inference;

(3) The trial court erred by instructing the jury that they could infer
malice by the use of a deadly weapon, where such instruction constituted an
improper burden shift;

(4) The trial court erred in denying Thomas's motions to strike where
the Commonwealth's evidence failed to prove his identity as Bell's shooter
beyond a reasonable doubt;

(5) The trial court erred in not allowing defense counsel to ask
William Jordan about prior, possibly unadjudicated bad acts, where such
acts, if not prosecuted, could have formed the basis for a motive to fabricate;

(6) The trial court erred in not allowing defense counsel to ask Mary
Schott about prior, possibly unadjudicated bad acts, where such acts, if not
prosecuted, could have formed the basis for a motive to fabricate; and

(7) The trial court erred in not allowing defense counsel to ask
Marcus Palmer about prior, possibly unadjudicated bad acts, where such
acts, if not prosecuted, could have formed the basis for a motive to fabricate.

ECF No. 10, attach. 1 at 9; *see also* ECF No. 10, attach. 2.

By Order dated September 11, 2015, the Virginia Court of Appeals denied

Petitioner's appeal.   ECF No. 10, attach. 2 at 1.   Concerning the first ground, the Virginia

Court of Appeals found that appellant fairly exercised his right to cross-examine Detective

Williams. Specifically, the court found that "the trial court was liberal in its allowance of defense counsel's cross-examination of Detective Williams, even reversing, in his favor, a previous evidentiary ruling" and "[e]ven if we were to find some such error, it would be harmless." ECF No. 10, attach. 2 at 6.

Regarding grounds two and three, the Court of Appeals found no error in the trial court's decision to grant Jury Instructions 11 and 12 on the grounds that the Virginia Supreme Court has established precedent regarding instructions materially indistinct from these and the Court of Appeals is bound to follow that precedent. ECF No. 10, attach. 2 at 8.

Concerning ground four, the Court of Appeals found there to be sufficient evidence to support the verdict. ECF No. 10, attach. 2 at 9. Specifically, "[t]he jury found appellant, no one else, to have perpetrated the offenses alleged" and "Don Vanstory's testimony, appellant's admissions, and forensic evidence most clearly establish appellant as the one who committed the offenses." ECF No. 10, attach. 2 at 9-10.

Regarding grounds five through seven, the appellant conceded that he failed to preserve the issues by failing to proffer the evidence that he would have introduced. ECF No. 10, attach. 2 at 10. Appellant asked the court to apply the "ends of justice" exception to Rule 5A:18. *See* ECF No. 10, attach. 2 at 10. The Court of Appeals held that "[a]ppellant . . . failed to affirmatively establish that a miscarriage of justice occurred" and "only speculates what possible benefits the witnesses might have received in exchange for their testimony." *Id.* Petitioner appealed the Court of Appeals' decision to the Supreme Court of Virginia, which refused his petition on August 5, 2016. *See* ECF No. 10, attach. 4.

On June 6, 2017, the Petitioner timely filed a petition for a writ of habeas corpus in

the Circuit Court of the County of Chesterfield. *See* ECF No. 10, attach. 5 at 2.  Therein,

Petitioner raised the following claims:

     (a) The Commonwealth knowingly used witness Don Vanstory's perjured and false testimony that he did not change his story for immunity of promise of leniency;

     (b) The Commonwealth used Detective Williams's unreliable hearsay testimony and deprived Thomas of his right of confrontation and cross-examination of the phone records in violation of Thomas's Sixth and Fourteenth Amendment rights to a fair trial;

     (c) Defense counsel's stipulation to the truth of the cell-phone records and failure to object to the use of the cell-phone records was tantamount to a guilty plea because it relieved the commonwealth of its burden of proving premeditation and deprived Thomas of his Fourteenth Amendment right to a fair trial;

     (d) The Commonwealth's Attorney used false, misleading and improper opinion statements during opening and closing arguments, stating "that DNA also eliminated all the white males that he's attempted to pin this on," depriving Thomas of a fair trial in violation of the Fourteenth Amendment;

     (e) The Commonwealth's Attorney used false, misleading and improper opinion statements during closing argument, stating, "DNA [also] eliminates the possibility that any females that [Thomas] [had] alluded to during [this] trial committed this [murder]," depriving Thomas of a fair trial in violation of the Fourteenth Amendment;

     (f) Defense counsel was ineffective for failing to object to the Commonwealth's use of witness Don Vanstory's false and perjured testimony in violation of the Sixth and Fourteenth Amendments;

     (g) Defense counsel was ineffective for agreeing to stipulate the truth of nTelos records and Sprint cell-phone records in violation of Thomas's rights to confrontation and cross-examination and to call for evidence beyond a reasonable doubt and a fair trial under the Sixth and Fourteenth amendments;

(h) Defense counsel was ineffective for failing to object to Detective Williams's hearsay testimony about nTelos and Sprint cell-phone records in violation of the Sixth and Fourteenth amendments;

(i) Defense counsel was ineffective for agreeing to stipulate the truth of Verizon cell-phone records in violation of Thomas's rights to confrontation and cross-examination and to call for evidence beyond a reasonable doubt and a fair trial under the Sixth and Fourteenth Amendments;

(j) Defense counsel was ineffective for failing to object to Detective Williams's hearsay testimony about Verizon cell-phone records in violation of the Sixth and Fourteenth Amendments;

(k) Defense counsel was ineffective for agreeing to stipulate the truth of AT&T cell-phone records in violation of Thomas's rights to confrontation and cross-examination and to call for evidence beyond a reasonable doubt and a fair trial under the Sixth and Fourteenth Amendments;

(l) Defense counsel was ineffective for failing to object to Detective Williams's hearsay testimony about AT&T cell-phone records in violation of the Sixth and Fourteenth Amendments;

(m) Defense counsel was ineffective for agreeing to stipulate the truth of maps, GPS coordinates, and the location of certain cell towers because the cell-phone records had been proven to be false, erroneous and unreliable;

(n) Defense counsel was ineffective for agreeing to the stipulation because cell-phone records supplied false, erroneous and unreliable evidence of the essential elements of premeditation as a plan, intent, and motive to kill in this first-degree murder trial;

(o) Defense counsel was ineffective because the stipulation agreed that the maps, GPS coordinates, and the location of certain cell towers accurately reflected information derived by data supplied by the cell-phone companies and stated that you shall find that information to be true, conclusions that should have been objected to because

6

they constituted opinion evidence that only an expert can state, requiring the in-court presence of the cell-phone companies who prepared the cell-phone records;

(p) Defense counsel was ineffective for failing to object to AT&T cell-phone records, marked into evidence as Commonwealth's Exhibit No. 170, because they constituted hearsay, thus denying Thomas his right to confrontation and cross examination and a fair trial in violation of the Sixth and Fourteenth Amendments;

(q) Defense counsel was ineffective for failing to object to Verizon cell-phone records, marked into evidence as Commonwealth's Exhibit No. 171, because they constituted hearsay, thus denying Thomas his right to confrontation and cross-examination and a fair trial in violation of the Sixth and Fourteenth Amendments;

(r) Defense counsel was ineffective for failing to object to a Cellebrite report, marked into evidence as Commonwealth's Exhibit No. 172, because it constituted double hearsay, thus denying Thomas his right to confrontation and cross-examination and a fair trial in violation of the Sixth and Fourteenth Amendments;

(s) Defense counsel was ineffective for failing to object to a Cellebrite report, marked into evidence as Commonwealth's Exhibit No. 173, because it constituted double hearsay, thus denying Thomas his right to confrontation and cross-examination and a fair trial in violation of the Sixth and Fourteenth Amendments;

(t) Defense counsel was ineffective for failing to object to Verizon cell-phone records, marked into evidence as Commonwealth's Exhibit No. 174, because they constituted hearsay, thus denying Thomas his right to confrontation and cross-examination and a fair trial in violation of the Sixth and Fourteenth Amendments;

(u) Defense counsel was ineffective for failing to object to Verizon cell-phone records, marked into evidence as Commonwealth's Exhibit No. 175, because they constituted hearsay, thus denying Thomas his right to confrontation and cross-examination and a fair trial, and this evidence went to the essential element of premeditation as a plan, intent, and motive to kill the victim in this murder trial;

7

(v) Defense counsel was ineffective for failing to object to nTelos and Sprint cell-phone records marked into evidence as Commonwealth's Exhibit No. 176, because they constituted hearsay, thus denying Thomas his right to confrontation and cross-examination and a fair trial, and this evidence went to the essential element of premeditation as a plan, intent, and motive to kill the victim in this murder trial;

(w) Defense counsel was ineffective for failing to object to nTelos and Sprint cell-phone records, marked into evidence as Commonwealth's Exhibit No. 177, because they constituted hearsay, thus, denying Thomas his right to confrontation and cross-examination and a fair trial, and this evidence went to the essential element of premeditation as a plan, intent, and motive to kill the victim in this murder trial;

(x) Defense counsel was ineffective for failing to object to the multi-page timeline of phone activities that was received and marked into evidence as Commonwealth's Exhibit No. 178 because the timeline was hearsay evidence, thus denying Thomas his right to confrontation and cross-examination of the cell-phone provider because the evidence went to the essential element of premeditation as a plan, intent and motive to kill the victim in Thomas's first-degree murder trial;

(y) Defense counsel was ineffective for failing to object to Detective Williams's testimony and Commonwealth's exhibit No. 179 as hearsay evidence, thus denying Thomas his right to cross-examination of the cell-phone provider to the cell-phone activities because the evidence went to the essential element of premeditation as a plan, intent and motive to kill the victim in Thomas's first-degree murder trial;

(z) Defense counsel was ineffective for failing to object to Commonwealth's Exhibit No. 180 and Detective Williams's testimony as hearsay evidence, thus denying Thomas his right to confrontation and cross-examination of the cell-phone provider to the phone activities because the evidence went to the essential

8

element of premeditation as a plan, intent and motive to kill the victim in Thomas's first-degree murder trial;

(1)(a) Defense counsel was ineffective for failing to object to Commonwealth's Exhibit No. 181 and Detective Williams's testimony as hearsay evidence, thus denying Thomas his right to confrontation and cross-examination of the cell-phone provider to the cell-phone activities because the evidence went to the essential element of premeditation as a plan, intent and motive to kill the victim in Thomas's first-degree murder trial;

(2)(a) Defense counsel was ineffective for failing to develop and present evidence of the picture taken off of Bell's cell phone showing Brandon Thomas asleep on Bobbi Jo Bell's bed with the floral pillow under him and it being used by Brandon Thomas as a head pillow to sleep on;

(3)(a) Defense counsel's waiver of Thomas's Sixth Amendment right to confrontation and cross-examination of the cell-phone records keepers and cell-phone records violated Thomas's rights to a fair trial in violation of the Fourteenth Amendment to the United States Constitution;

(4)(a) The stipulation to the truth of the cell phone records and the waiver of Thomas's right to confrontation and cross-examination of the cell-phone records was not voluntarily, knowingly or intelligently entered with the advice and assistance of counsel;

(5)(a) Defense counsel was ineffective for failing to object to the prosecutors false, misleading and improper opinions and statements during both opening and closing statements;

(6)(a) Defense counsel was ineffective for failing to use the March 7, 2014 letter to impeach Vanstory's false testimony that he did not change his story for immunity or a promise of leniency;

(7)(a) Defense counsel was ineffective for failing to challenge the sufficiency of the evidence based on the totality of the circumstances before the jury, failing to establish guilt beyond a reasonable doubt in this particular case and Thomas is actually innocent.

*Id.* at 2-8.

On July 19, 2017, the state habeas court granted Thomas's motion to submit an amended

petition, in which he added the following claims:

(8)(a) The trial court's rulings on Thomas's claims under *Giglio v. United States*, 405 U.S. 150 (1972), were contrary to or involved an unreasonable application of this clearly established Supreme Court case law, which deprived Thomas of the right to cross-examine witnesses for the Commonwealth about immunity and an exception of leniency for crimes that were not prosecuted that affected the witnesses' credibility and indicated a motive to fabricate or a bias in favor of the Commonwealth;

(9)(a) Defense counsel David Baugh failed to present available evidence to the jury of the promises of immunity and/or leniency to the Commonwealth's witness Don Vanstory for crimes not prosecuted in exchange for his testimony against Thomas, and to rebut Vanstory's testimony that he did not change his story because immunity and/or leniency;

(10)(a) The Commonwealth failed to disclose and suppressed favorable evidence that Commonwealth's witnesses were promised immunity or leniency by officers of the Chesterfield Police Department in exchange for their testimony;

(11)(a) Thomas's conviction was obtained in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963);

(12)(a) Defense counsel failed to properly object and preserve Thomas's rights under *Brady v. Maryland*, when the Commonwealth failed to disclose or suppressed requested exculpatory or impeachment evidence that officers of the Chesterfield Police Department made promises of immunity or leniency not to prosecute William Jordan, Mary Schott, and Marcus Palmer and other witnesses for their illegal drug activities and/or other crimes in exchange for their testimony against Thomas; and

(13)(a) Defense counsel David Baugh failed to proffer available evidence of promises of immunity or leniency to three of the Commonwealth's witness—William Jordan, Mary Schott, and Marcus Palmer—for drug-dealings they were not prosecuted for in exchange for their testimony.

*See* ECF No. 10, attach. 5 at 8-9.

With respect to claims (a), (b), (d), (e), (10)(a), and (11)(a), the state habeas court held that Thomas lacked standing because he failed to raise the arguments both at trial and on appeal. ECF No. 10 attach. 5 at 10-11. Regarding claim (8)(a), the state court held that Thomas lacked standing because the claim was "raised and adjudicated adversely to him at trial and on direct appeal." *Id.* at 11-12. Furthermore, the court held that part of claim (7)(a) was not cognizable because it asserted Thomas's innocence and "an assertion of actual innocence is outside the scope of habeas corpus review, which concerns only the legality of the petitioner's detention." *Id.* at 12 (quoting *Lovitt v. Warden*, 266 Va. 216, 259 (2003)).

Regarding claims (c), (g), (h), (i), (j), (k), (l), (m), (n), (o), (p), (q), (r), (s), (t), (u), (v), (w), (x), (y), (z), (1)(a), (3)(a), and (4)(a), the state court held that "Thomas failed to proffer any evidence demonstrating that any other information provided by the phone companies . . . could have been challenged as inauthentic or inaccurate." ECF No. 10, attach. 5 at 18-19. The court also held that "Thomas has not met his burden to prove that, but for counsel's alleged ineffectiveness, the outcome of Thomas's trial would have been different" and as such, these claims satisfied neither *Strickland* prong. ECF No. 10, attach. 5 at 20.

The court dismissed claims (f), (6)(a), and (9)(a) because "decisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so." ECF No. 10, attach. 5 at 21 (quoting *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005). Additionally, the court held that

"Thomas has not met his burden to prove that, but for counsel's alleged ineffectiveness, the outcome of Thomas's trial would have been different" and so neither prong of *Strickland* was satisfied. ECF No. 10, attach. 5 at 25.

Regarding claim (2)(a), the court held that "counsel reasonably could have decided not to introduce photographic evidence of Thomas sleeping on one of Bell's floral pillows." ECF No 10, attach. 5 at 26. The court also held that Petitioner "has not met his burden to prove that, but for counsel's alleged ineffectiveness, the outcome of Thomas's trial would have been different" and so neither prong of *Strickland* was satisfied. ECF No. 10, attach. 5 at 27.

With respect to claim (5)(a), the court held "counsel reasonably could have decided not to raise repeated objections to the prosecutor's statements in his opening and closing arguments." ECF No. 10, attach. 5 at 28. Further, the court held that Petitioner "has not met his burden to prove that, but for counsel's alleged ineffectiveness, the outcome of Thomas's trial would have been different" and so neither prong of *Strickland* was satisfied. ECF No. 10, attach. 5 at 29.

Regarding claim (7)(a), the court held that "counsel vigorously argued to the jury in his closing argument that the Commonwealth had failed to prove Thomas's guilt beyond a reasonable doubt." ECF No. 10, attach. 5 at 30. Moreover, they held "Thomas has not met his burden to prove that, but for counsel's alleged ineffectiveness, the outcome of Thomas's trial would have been different" and so neither prong of *Strickland* was satisfied. *Id.*

Concerning claim (12)(a), the court held the claim was barred because "[c]ounsel is not ineffective for failing to file frivolous motions and objections." ECF No. 10, attach 5 at 30. The court further held that "Thomas has not met his burden to prove that, but for counsel's alleged ineffectiveness, the outcome of Thomas's trial would have been different" and so neither prong of *Strickland* was satisfied. ECF No. 10, attach. 5 at 31.

With respect to claim (13)(a), the court found that because the Petitioner "failed to proffer any evidence to support his claim that detectives promised immunity or leniency to any of these witnesses in exchange for their testimony" the claim was meritless. ECF No. 10, attach. 5 at 32. Additionally, the state habeas court found that "Thomas has not met his burden to prove that, but for counsel's alleged ineffectiveness, the outcome of Thomas's trial would have been different" and so neither prong of *Strickland* was satisfied. *Id.*

The Petitioner appealed the state habeas court's decision to the Supreme Court of Virginia, and raised two assignments of error:

1.  The circuit court's determination that no evidentiary hearing was necessary based on the record and evidence already before the Court, was erroneous or was contrary to, or involved an unreasonable determination of the facts because the determination of facts was based on perjured or false or misleading or inconsistent incredible sworn statements presented to the Court by Assistant Commonwealth's Attorney Shawn A. Gobble.

2.  The circuit court's determination that Brandon Thomas failed to proffer, identify or present any evidence or failed to prove ineffective assistance of counsel under both prongs of Strickland ineffectiveness, was erroneous or contrary to or involved an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984).

*See* ECF No. 1 at 39, 46. The Supreme Court of Virginia refused Thomas's appeal on May 24, 2019. *See* ECF No. 10, attach. 6.

Petitioner filed the instant *pro se* § 2254 Petition for federal habeas relief, ECF No. 1, on August 10, 2019. Therein, Petitioner attached hand written pages that raised the exact same grounds for relief as he did in his state habeas petition. *See supra* at 5-10; ECF No. 1 at 6-12. However, Petitioner appears to have inadvertently excluded the phrase "because they constituted hearsay, thus denying Thomas his right to confrontation and cross-examination and a fair trial" from Claim (v). Petitioner also appears to have inadvertently excluded Claims (w), (x), (y), (z), as

13

well as Claims (8)(a), (9)(a), (10)(a), (11)(a), (12)(a), and (13)(a) from his handwritten federal habeas petition. Because of this, Respondent does not address those Claims and only responds to the handwritten Claims listed under the section titled "Grounds for Relief". ECF No. 10 at 11, n.1. However, because *pro se* filings should be construed liberally, and because Petitioner did attach the entirety of his state habeas petition to his federal habeas petition, this Court finds it appropriate to consider the attached state claims as being included in the federal habeas petition. *Estelle v. Gamble*, 429 U.S. 97, 106 (2007) ("a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *Jackson v. Duckworth*, 112 F.3d 878, 881 (7th Cir. 1997) (extending this principle to habeas corpus petitions as well, which are also entitled to liberal construction). Therefore, this Court finds it proper to address Claims (w), (x), (y), (z) as well as Claims (8)(a), (9)(a), (10)(a), (11)(a), (12)(a), and (13)(a).

On January 6, 2020, Respondent filed a Motion to Dismiss and a Rule 5 Answer. *See* ECF No. 10. Petitioner filed a Response in Opposition on January 28, 2020. *See* ECF No. 13. Therefore, the instant Petition and Motion to Dismiss are ripe for recommended disposition.

## II. DISCUSSION

A. Exhaustion

Before addressing the merits of a federal habeas petition, the preliminary inquiry must be whether Petitioner appropriately exhausted the claims asserted in the Petition. Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and

sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). Here, the Respondent concedes that Thomas has properly exhausted his claims in state court. *See* ECF No. 10 at 17.

## B. Procedural Default

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). As the Fourth Circuit has explained, the procedural default doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). *See also Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006) ("A federal claim is deemed procedurally defaulted where 'a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule.' . . . A federal court cannot review a procedurally defaulted claim unless the prisoner can demonstrate cause and prejudice for the default or a fundamental miscarriage of justice.") (quoting *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998); (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)) (internal citations omitted). As the Supreme Court recently

observed, "[t]he procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)).

Additionally, a petitioner seeking federal habeas relief also procedurally defaults his claims when he "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). When considering a petition for federal habeas corpus, § 2254(d) mandates that a state court's finding of procedural default be presumed correct, provided that the state court relied explicitly on procedural grounds to deny petitioner relief and that the procedural rule relied on is an independent and adequate state ground for denying relief. *See Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (explaining that "an adequate and independent state procedural bar to the entertainment of constitutional claims must have been 'firmly established and regularly followed' by the time as of which it is to be applied") (citing *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)).

Absent a showing of cause for the default and prejudice or a fundamental miscarriage of justice (such as actual innocence), this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). *See also Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (explaining that "a petitioner may nonetheless overcome procedural default, and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review") (citing *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Savino v. Murray,* 82 F.3d 593, 602 (4th Cir. 1996)). The Fourth Circuit has held that "[t]o establish cause, a petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's

16

procedural rule.'" *Hedrick v. True*, 443 F.3d 342, 366 (4th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). *See also Davila v. Davis*, 137 S. Ct. 2058, 2065, 198 L. Ed. 2d 603 (2017) ("A factor is external to the defense if it 'cannot fairly be attributed to' the prisoner.") (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). "This requires a demonstration that 'the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding.'" *Hedrick v. True*, 443 F.3d 342, 366 (4th Cir. 2006) (quoting *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999)). "Importantly, a court need not consider the issue of prejudice in the absence of cause." *Booker v. Clarke*, No. 1:15CV781 (JCC/JFA), 2016 WL 4718951, at *5 (E.D. Va. Sept. 8, 2016), *appeal dismissed*, 678 F. App'x 152 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 234, 199 L. Ed. 2d 152 (2017), *reh'g denied*, 138 S. Ct. 538, 199 L. Ed. 2d 414 (2017) (citing *Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996)).

Claims (a), (b), (d), (e), (10)(a), and (11)(a) are procedurally defaulted on adequate and independent state law grounds. Here, the trial court dismissed claims (a), (b), (d), (e), (10)(a), and (11)(a) in Petitioner's state habeas petition because they concern non-jurisdictional issues that could have been raised at trial and on direct appeal, and under *Slayton*, they are not cognizable in a writ of habeas corpus. *Slayton v. Parrigan*, 215 Va. 27, 29 (1974) is an independent and adequate ground of state law that precludes federal review. *See Lewis v. Wheeler*, 609 F.3d 291, 309 (4th Cir. 2010); *Walker v. Kelly*, 589 F.3d 127, 131 (4th Cir. 2009); *Vinson v. True*, 436 F.3d 412, 416 (4th Cir. 2006). *See also Johnson v. Clarke*, No. 1:13CV423 LO/IDD, 2014 WL 3697405, at *5 (E.D. Va. July 23, 2014) ("The Fourth Circuit has consistently held that 'the procedural default rule set forth in *Slayton* constitutes an adequate and independent state law ground for decision.'") (quoting *Mu'min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997)).

With respect to (7)(a), the state habeas court found that it constitutes a claim that the Petitioner is actually innocent which is not cognizable in state habeas court. Therefore, that portion of the claim is not cognizable under *Teleguz* in a writ of habeas corpus. *Teleguz v. Commonwealth*, 279 Va. 1, 1, (2010). Claims of actual innocence are barred from review under *Teleguz,* which is an adequate and independent state ground for dismissal. *See Teleguz v. Commonwealth*, 279 Va. 1, 1, (2010); *see also*, *Lovitt v. Warden*, 266 Va. 216, 259 (2003) (holding that the scope of habeas corpus review only concerns the legality of the petitioner's detention). Additionally, the undersigned notes that in Virginia, assertions of actual innocence are governed by Virginia Code §§ 19.2-327.1 through -327.6 and Virginia Code §§ 19.2-327.10 through -327.14, and are outside the scope of federal habeas corpus review, which concerns only the legality of the petitioner's detention. *See Lovitt v. Warden*, 266 Va. 216, 259, 585 S.E.2d 801, 827 (2003) ("We also observe that an assertion of actual innocence is outside the scope of habeas corpus review, which concerns only the legality of the petitioner's detention.") (citing *Virginia Parole Bd. v. Wilkins*, 255 Va. 419, 420-21, 498 S.E.2d 695, 696 (1998); *McClenny v. Murray*, 246 Va. 132, 134-35, 431 S.E.2d 330, 331 (1993); *Smyth v. Holland*, 199 Va. 92, 96-97 S.E.2d 745, 748 (1957)).

Lastly, in Claim (8)(a) the state habeas court found that the Petitioner lacked standing to raise the claim, because "it was raised and adjudicated adversely to him at trial and on appeal." ECF No. 10, attach. 5 at 11-12. A non-jurisdictional issue that is raised and decided either at trial *or* on appeal from the criminal conviction will not be considered in a habeas corpus proceeding. *See Henry v. Warden*, 265 Va. 246, 249 (2003). At trial, Defense Counsel repeatedly raised *Giglio v. United States* as a justification to continue his line of questioning, after the Assistant Commonwealth's Attorney objected to the relevancy of questioning witnesses about their past

criminal history.[1]  *See* Trial Tr. vol. 2, 59-60, 61-63, 96-97.  Defense Counsel attempted to argue that questioning witnesses about their prior criminal history was valid under *Giglio* because it would amount to circumstantial evidence of a promise of immunity.[2]  Based on the trial transcript, it appears that counsel's theory was that any admittance by witnesses of past criminal acts to the police during this investigation that subsequently went unprosecuted is evidence of an agreement of leniency or promise of immunity to those witnesses.  *See* Trial Tr. vol. 2, 59-60, 61-63, 96-97.

*Giglio*, however, does not go that far.  Rather, *Giglio* "holds that when the reliability of a witness may be determinative of guilt or innocence, nondisclosure of evidence that affects credibility is a denial of fundamental fairness required by the Due Process Clause of the Fifth Amendment."  *U.S. v. Sutton*, 542 F.2d 1239, 1241-42 (4th Cir. 1976). *Giglio* applies the holding from *Brady v. Maryland*, to impeachment evidence. *United States v. Taylor*, 942 F.3d 205, 224 (4th Cir. 2019).  Here, there is no evidence that there were promises of immunity to witnesses other than Vanstory, and uncharged acts without more does not lend to a reasonable inference that such promises were made.[3]  There cannot be failure to disclose evidence that does not exist.  Moreover, the Commonwealth disclosed the offer of immunity to Vanstory to Defense Counsel

---

[1] During a brief recess there was an exchange regarding the *Giglio* objections. Trial Tr. vol. 2 62-63. (Trial Judge: "Do you have that case?" Defense Counsel: "*Giglio*? I don't know. I don't know if I have it with me. I can see if I can find it. I didn't bring the cite."). Later that day the trial judge reviewed *Giglio* and reaffirmed his previous decisions sustaining the objections. Trial Tr. vol. 2, 163-64. (Trial Judge: "The Court believes its ruling was correct. . . the Court gave Mr. Baugh an opportunity to quiz the witness on whether or not he had accepted any promises in exchange for his testimony. . . I think my original ruling on Mr. Baugh's ability to quiz a witness about any promises was a correct ruling and the Court's rule precluded Mr. Baugh from exploring the witness' criminal behavior, otherwise I think it was correct, as well.").

[2] Defense Counsel Baugh wrote a letter to Mr. Schandevel, Assistant Attorney General, proclaiming his performance at trial was ineffective. Baugh wrote "I realized the issue when, following the last of my numerous *Giglio* objections and the mentioning of *Giglio*, the trial judge stated, and I believe it in the record "I am not familiar with the case." ECF No. 13 at 12-14. This Court has reviewed the trial transcript and finds Mr. Baugh's portrayal of the events at trial inaccurate.

[3] Petitioner's allegations as they pertain to witnesses Mary Schott, Marcus Palmer, and William Jordan, in Claims (12)(a), and (13)(a), are discussed *infra* Sections (D)(1)(G) and (D)(1)(H).

19

before the trial began. S.R., Respondent's Exh. 5 at 3.[4] The Commonwealth also attempted to introduce the letter promising immunity to Vanstory as evidence at trial. Because the *Giglio* objections alleged in claim (8)(a) were raised at trial and adversely adjudicated, procedural default bars this Claim.

Petitioner may overcome procedural default by "showing cause and prejudice or a fundamental miscarriage of justice due to [his] actual innocence." *Silk*, 2009 WL 742552, at *3 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998), and *Harris v. Reed*, 489 U.S. 255, 262 (1989)). Throughout his briefs, Petitioner intermittently asserts his innocence without supporting evidence. *See* ECF No. 1 at 19-20, 24, 30. Without any supporting evidence, Petitioner cannot demonstrate a fundamental miscarriage of justice because conclusory statements of actual innocence are insufficient, and he offers no argument, new reliable evidence, or factual contentions to substantiate such a claim. *Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir. 1999) ("In order to use an actual innocence claim as a procedural gateway to assert an otherwise defaulted claim, 'the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the *new evidence*.'") (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)) (emphasis added).

"[C]ause" refers to "some objective factor external to the defense [that] impeded counsel's [or the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Petitioner does not argue that the Court's failure to address his claims will result in a "fundamental miscarriage of justice," nor does he offer any "objective factor" that prevented him from presenting these claims. Therefore, Petitioner failed to overcome procedural default because

---

[4] This citation refers to an exhibit submitted by Respondent to Chesterfield Circuit Court during the pendency of Petitioner's state habeas proceedings.

he did not present argument regarding some objective factor external to the defense that impeded his efforts to comply with the rule. *Accord Strickler*, 527 U.S. at 283 n.24. Absent cause, a prejudice analysis is unnecessary. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995) (noting that courts should not consider the issue of prejudice absent cause to avoid the risk of reaching an alternative holding). The undersigned **FINDS** that Claims (a), (b), (d), (e), (7)(a), (8)(a), (10)(a) and (11)(a) are procedurally defaulted without any demonstration of cause for the defaults nor any new evidence to support a claim of actual innocence that would prevent a miscarriage of justice. Accordingly, the undersigned **RECOMMENDS** that Claims (a), (b), (d), (e), (7)(a), (8)(a), (10)(a) and (11)(a) be **DISMISSED**.

C. Standards of Review

*1. 28 U.S.C. § 2254(d)*

Habeas relief is warranted only if Petitioner can demonstrate that the adjudication of each of his claims by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Thus, federal habeas relief is precluded, so long as "fair-minded jurists could disagree" on the correctness of the state court's decision. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA[5], § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's

---

[5] Antiterrorism and Effective Death Penalty Act of 1996

21

decision conflicts with this Court's precedents. It goes no further.") (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified *res judicata* rule" under § 2244)). In other words, "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains." *Premo v. Moore*, 562 U.S. 115, 121 (2011).

In *Williams v. Taylor*, the Supreme Court explained that the "exceptions" encapsulated by § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S. 362, 404-05 (2000). A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. This Court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case. *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000). *See also Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

In making this determination under Section 2254(d)(1), the Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011) ("Section 2254(d)(1) refers, in the past tense, to a state-court adjudication

that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court."). Thus, it is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997). *See also Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (explaining that the Court independently reviews whether that decision satisfies either standard). Additionally, in undertaking such review, this Court is mindful that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 2. *Ineffective Assistance of Counsel*

Because there is no allegation that the state courts decided Petitioner's state habeas "differently than [the U.S. Supreme] Court has on a set of materially indistinguishable facts," *Williams v. Taylor*, 529 U.S. 362, 413 (2000), the relevant exception is "permitting relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law" and "[t]he applicable federal law consists of the rules for determining when a criminal defendant has received inadequate representation as defined in *Strickland*," *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Harrington v. Richter*, 562 U.S. 86, 100 (2011); 28 U.S.C. § 2254(d)(1)). *See also Strickland v. Washington*, 446 U.S. 668 (1984). Generally, to have been entitled to habeas relief in State court for ineffective assistance of counsel claims under the Sixth Amendment, Petitioner had to show both that his Defense Counsel provided deficient assistance, and that he was prejudiced as a result of counsel's deficiency. *Strickland v. Washington*, 446 U.S.

23

668, 700 (1984) (conceptualizing the inquiry as two required prongs: a deficiency prong and a prejudice prong). First, to establish deficient performance, Petitioner was required to show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 446 U.S. at 688-89 (holding that there is a strong presumption that trial counsel provided reasonable professional assistance). Second, Petitioner was also required to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 687, 693-94 (holding that counsel's errors must be "so serious as to deprive the defendant of a fair trial," and that a petitioner must "show that the errors had some conceivable effect on the outcome of the proceeding").

The United States Supreme Court summarized the high bar faced by petitioners in a federal habeas proceeding where a petitioner's Sixth Amendment ineffective assistance of counsel claims were previously rejected by the state court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so . . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo v. Moore*, 562 U.S. 115, 122–23 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009))) (internal citations omitted). *See also Knowles*, 556 U.S. at 123 ("Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard . . . Mirzayance's

ineffective-assistance claim fails.") (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (*per curiam*)). To be sure, and particularly apropos to Petitioner's claim, the "[f]ailure to raise a meritless argument can *never* amount to ineffective assistance." *Juniper v. Zook*, 117 F. Supp. 3d 780, 791 (E.D. Va. 2015) (quoting *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996)) (emphasis added).

With these principles in mind, the undersigned now turns to the merits of the remaining Claims of the Petition.

D. Facts and Findings of Law

1. *Ineffective Assistance of Counsel*

A. Decision to Stipulate to the Truth of Cell-Phone Records

In Claims (g), (i), and (k), Petitioner contends that Trial Counsel was ineffective for agreeing to stipulate the truth of Spring, nTelos, Verizon, and AT&T cell-phone records in violation of Thomas's Sixth and Fourteenth Amendment rights. *See* ECF No 1 at 7-8. In Claim (4)(a), Petitioner argues that the stipulation to the truth of the cell phone records was not voluntarily, knowingly or intelligently entered with the assistance of counsel. *See* ECF No. 1 at 11. In Claim (o), Petitioner contends that Trial Counsel was ineffective because the stipulation agreed that the maps, GPS coordinates, and location of cell towers accurately reflected information derived by cell-phone companies and that information was false. *See* ECF No. 1 at 8. In Claims (n) and (m), Petitioner contends that Trial Counsel was ineffective for stipulating to the truth of the cell phone records because they were false, erroneous, and unreliable. In order for Petitioner to be granted habeas relief on these Claims, he must demonstrate that Defense Counsel provided ineffective assistance of counsel which fell below the permissible minimum level of effectiveness by stipulating to the truth of the cell-phone records and that doing so prejudiced Petitioner, such

that the outcome likely would have been different. Consideration of these Claims necessitates rejection of the same under both *Strickland* prongs, and the Virginia state court's decision to do so was not unreasonable.

Regarding claims (n), (m), and (o), an employee at nTelos mistakenly told investigators the incorrect cell-phone information which suggested that the Petitioner was in Richmond the morning after Bell's murder. However, a detective testified at trial that investigators realized the information was false shortly after they were informed. Trial Tr. vol. 3, 161-66. They were given correct and accurate data in hard copy the week after the murder. *Id.* There was no other evidence of erroneous or false data.

Moreover, for Claims (g), (i), (k), (m), (n), and (o) decisions that "primarily involve trial strategy and tactics," such as "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed" are "[d]ecisions that may be made without the defendant's consent." *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (quoting *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992) (en banc)). "Experienced defense attorneys routinely stipulate to undisputed facts in order to maintain credibility with the jury when challenging other aspects of the prosecution case." *United States v. Gaskin* 364 F.3d 438, 469 (2d Cir. 2004). The cell-phone records constitute undisputed facts that defense attorneys would regularly stipulate to, and as such, deciding to stipulate is a trial strategy that falls within Defense Counsel's control. Consideration of these Claims requires rejection under *Strickland*, and the Virginia state court's decision to do so was not unreasonable.

Regarding Petitioner's (4)(a) Claim, decisions that "primarily involve trial strategy and tactics," are "[d]ecisions that may be made without the defendant's consent." *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (quoting *United States v. Teague*, 953 F.2d 1525, 1531 (11th

Cir. 1992) (en banc)).  A trial counsel's decision to stipulate to the truth of certain records is one such trial strategy.  The Supreme Court has recognized that "[t]he adversary process could not function effectively if every tactical decision required client approval."  *Taylor v. Illinois*, 484 U.S. 400, 418 (1988).  However, there are four decisions requiring a defendant's formal consent because they are of such constitutional import: whether to plead guilty, waive a jury trial, testify on one's own behalf, or file an appeal.  *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Stipulating to the truth of cell phone records is not one such decision.  As such, this Claim is meritless, and the Virginia state court's decision to dismiss it was not unreasonable.

Even assuming *arguendo*, that Trial Counsel's performance fell below the acceptable level of effectiveness by stipulating to the truth of cell phone records (which the undersigned has already deemed unwarranted) Petitioner cannot establish *Strickland*'s prejudice prong, because it is not reasonably likely the outcome would have changed.  *See Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) ("In assessing prejudice under *Strickland,* the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different. . . . This does not require a showing that counsel's actions 'more likely than not altered the outcome' . . . . The likelihood of a different result must be substantial, not just conceivable.") (citing *Wong v. Belmontes,* 558 U.S. 15, 27 (2009) (per curiam); *Strickland,* 466 U.S. at 693, 696-97).  In Petitioner's state habeas petition, he argues that "[t]he cumulative effect of defense counsel's performance. . . prejudicially affected Mr. Thomas' substantial rights so as to deprive him of a fair trial."  ECF No. 1 at 38.  However, Petitioner here has failed to specifically demonstrate or articulate how the trial outcome would

27

have been different had Trial Counsel decided not to stipulate to the truth of the cell-phone records. Thus, Petitioner could not have been prejudiced under these circumstances.

In sum, the undersigned **FINDS** that Claims (g), (i), (k), (n), (m), (o), and (4)(a) lack merit, and that the Virginia State Court's rationale for denying this Claim when it was raised in Petitioner's state habeas petition "was not contrary to federal law, nor did it involve an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence." *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at *2 (E.D. Va. Mar. 30, 2010). Accordingly, the undersigned **RECOMMENDS** that Claims (g), (i), (k), (n), (m), (o), and (4)(a) be **DISMISSED**.

### B. Failure to Object to Hearsay Testimony and Prosecutor's Statements

In Claims (h), (j), (l), (w), (x), (y), (z), and (1)(a) Petitioner contends that counsel was ineffective for failing to object to Detective Williams' "hearsay testimony" about nTelos, Sprint, AT&T and Verizon cell-phone records, in violation of his Sixth and Fourteenth Amendment rights. *See* ECF No. 1 at 7. Claims (p), (q), (r), (s), (t), (u), and (v), assert that Defense Counsel was ineffective for failing to object to AT&T, Verizon, Sprint, nTelos, and Cellebrite reports and records because they "constitute[d] Hearsay" and violated Petitioner's Sixth and Fourteenth Amendment rights. *See* ECF No. 1 at 9-10. In Claim (f), Petitioner argues that counsel was ineffective for failing to object to the Commonwealth's use of Don Vanstory as a witness. Claim (5)(a) asserts that Defense Counsel was ineffective for failing to object to false, misleading and improper statements during both opening and closing statements. *See* ECF No. 1 at 12. Consideration of these Claims requires rejection under *Strickland*, and the Virginia State Court's decision to do so was not unreasonable.

Decisions that "primarily involve trial strategy and tactics," including "what evidence should be introduced, what stipulations should be made, what *objections should be raised*, and what pre-trial motions should be filed" are "[d]ecisions that may be made without the defendant's consent". *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (emphasis added) (quoting *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992) (en banc)). "As with trial decisions to offer or stipulate to certain evidence, decisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so." *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005). Additionally, "[c]ounsel is not required to engage in the filing of futile motions." *Moody v. Polk*, 405 F.3d 141, 151 (4th Cir. 2005). These Claims constitute attacks on precisely the types objections that fall within the discretionary purview of defense attorneys, and additionally, filing a motion regarding these claims would have been futile, and thus, unnecessary under *Moody*.

In Claim (f), Petitioner contends that counsel was ineffective for failing to object to the Commonwealth's use of witness Don Vanstory. *See* ECF No. 1 at 7. "As with trial decisions to offer or stipulate to certain evidence, decisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so." *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005). Moreover, Petitioner has not offered a good-faith basis upon which counsel could have objected to Vanstory's testimony. At trial, Vanstory testified he told detectives the truth after he prayed, soul searched, and spent time with family, and then decided it was the right thing to do. Trial Tr. vol. 3, 45-46. The Commonwealth proffered evidence that the prosecutors only offered immunity after Vanstory told the truth to detectives, and the offer was contingent on his truthful testimony

at trial.[6] Defense Counsel used available means to challenge Vanstory's credibility as a witness.
It cannot be overstated: "[f]ailure to raise a meritless argument can never amount to ineffective
assistance." *Juniper v. Zook*, 117 F. Supp. 3d 780, 791 (E.D. Va. 2015) (quoting *Moore v. United
States*, 934 F.Supp. 724, 731 (E.D. Va. 1996)).

Even assuming *arguendo*, that Trial Counsel's performance fell below the acceptable level
of effectiveness by failing to object to the cell-phone records and Vanstory's inclusion as a witness
(which the undersigned has already deemed unwarranted) Petitioner cannot establish *Strickland*'s
prejudice prong, because it is not reasonably likely the outcome would have changed. *See
Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Wong v. Belmontes*, 558 U.S. 15, 27
(2009) (per curiam); *Strickland*, 466 U.S. at 693, 696-97). In Petitioner's state habeas petition, he
argues that "[t]he cumulative effect of defense counsel's performance and the prosecutor's remarks
and improper misconduct prejudicially affected Mr. Thomas' substantial rights so as to deprive
him of a fair trial." ECF No. 1 at 38. However, Petitioner here has not articulated or demonstrated
how the trial's outcome would have been different had Trial Counsel chosen to object, because he
has failed to explain on what basis Vanstory's testimony could have been excluded altogether.
Thus, Petitioner could not have been prejudiced under these circumstances.

In sum, the undersigned **FINDS** that Claims (h), (j), (l), (w), (x), (y), (z), (1)(a), (p), (q),
(r), (s), (t), (u), (v), and (5)(a) lack merit, and that Virginia State Court's rationale for denying this

---

[6] The Commonwealth Attorney explained that:

> At most, when members of the Chesterfield County Police Department were conducting
> interviews of witnesses in this matter, they expressed that they were more concerned with
> investigating the homicide than whatever crimes the witnesses previously committed or
> whether they had provided drugs to the victim prior to her death or committed alleged crimes
> with the victim or the defendant in the past.

S.R., Respondent's Exh. 5 at 3. The offer and subsequent letter promising Vanstory immunity for his testimony did
not come until after Vanstory had told Chesterfield Detectives the truth. S.R., Respondent's Exh. 5 at 2.

Claim when it was raised in Petitioner's state habeas petition "was not contrary to federal law, nor did it involve an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence." *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at \*2 (E.D. Va. Mar. 30, 2010). Accordingly, the undersigned **RECOMMENDS** that Claims (h), (j), (l), (w), (x), (y), (z), (1)(a), (p), (q), (r), (s), (t), (u), (v), and (5)(a) be **DISMISSED**.

C. Agreement to Stipulate *and* Failure to Object

In Claim (c), Petitioner contends that Trial Counsel was ineffective for stipulating to the truth of the cell-phone records and failing to object to the use of the records. *See* ECF No. 1 at 6. In order for Petitioner to be granted habeas relief on this Claim, he must demonstrate that Trial Counsel provided ineffective assistance of counsel which fell below the permissible minimum level of effectiveness by stipulating to the truth of the cell-phone records and failing to object to the use of the records, and that the failure to make such request prejudiced Petitioner, such that the outcome likely would have been different. Consideration of this Claim requires rejection under *Strickland*, and the Virginia State Court's decision to do so was not unreasonable.

As explained *supra*, defense attorneys may stipulate to undisputed facts to maintain credibility with the jury or to avoid testimony which may highlight the prosecution's analysis. *See United States v. Gaskin*, 364 F.3d 438, 469 (2d Cir. 2004); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 328 (2009). Similarly, the extent and manner of objections at trial is an essential part of a trial lawyer's litigation strategy. Decisions that "primarily involve trial strategy and tactics," like "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed" are "[d]ecisions that may be made without the defendant's consent". *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (quoting *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992) (en banc)). It cannot be said that the

31

decisions to stipulate and not object to the records made fall below any objective standard of reasonableness.

Even assuming *arguendo*, that Trial Counsel's performance fell below the acceptable level of effectiveness by stipulating to the truth of cell phone records and failing to object (which the undersigned has already deemed unwarranted) Petitioner cannot establish *Strickland*'s prejudice prong, because it is not reasonably likely the outcome would have changed. *See Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Wong v. Belmontes,* 558 U.S. 15, 27 (2009) (per curiam); *Strickland,* 466 U.S. at 693, 696-97). In Petitioner's state habeas petition, he appears to argue that "[t]he cumulative effect of defense counsel's performance. . . prejudicially affected Mr. Thomas' substantial rights so as to deprive him of a fair trial." ECF No. 1 at 38. However, Petitioner has failed to specifically articulate or demonstrate how the trial's outcome would have been different had Trial Counsel decided to contest the truth of the cell-phone records and chosen to object. Thus Petitioner could not have been prejudiced under these circumstances.

In sum, the undersigned **FINDS** that Claim (c) lacks merit, and that the Virginia State Court's rationale for denying this Claim when it was raised in Petitioner's state habeas petition "was not contrary to federal law, nor did it involve an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence." *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at *2 (E.D. Va. Mar. 30, 2010). Accordingly, the undersigned **RECOMMENDS** that Claim (c) be **DISMISSED**.

D. Waiver of Petitioner's Right to Cross Examine Cell-Phone Records

In Claim (3)(a), Petitioner contends that Defense Counsel's waiver of the right to cross-examine the cell phone record's keepers violated the Petitioner's right to a fair trial in violation of the Fourteenth Amendment. *See* ECF No. 1 at 32. In order for Petitioner to be granted habeas

32

relief on this Claim, he must demonstrate that Trial Counsel provided ineffective assistance of counsel which fell below the permissible minimum level of effectiveness by waiving cross-examination. Choosing how to, or even whether to cross-examine a witness is well within the discretion of counsel. *United States v. Clayborne*, 509 F.2d 473, 479 (D.C. Cir. 1974). This is within the purview of counsel's trial strategy and such decisions are virtually unchallengeable without a showing of exceptional need. *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005). Defense Counsel reasonably could have decided that it was not worth the time to cross-examine the cell-phone record's keepers. Additionally, any error in the cell-phone records was caught early on in the investigation. Trial Tr. vol. 3, 161-66. Consideration of this Claim requires rejection under *Strickland*, and the Virginia State Court's decision to do so was not unreasonable.

Even assuming *arguendo*, that Trial Counsel's performance fell below the acceptable level of effectiveness by stipulating to the truth of cell phone records and waiving Petitioner's right to cross-examine the record's keepers (which the undersigned has already deemed unwarranted) Petitioner cannot establish *Strickland*'s prejudice prong, because it is not reasonably likely the outcome would have changed. *See Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam); *Strickland*, 466 U.S. at 693, 696-97). In Petitioner's state habeas petition, he appears to argue that "[t]he cumulative effect of defense counsel's performance. . . prejudicially affected Mr. Thomas' substantial rights so as to deprive him of a fair trial." ECF No. 1 at 38. However, Petitioner here has failed to articulate or demonstrate how the trial's outcome would have been different had counsel cross-examined the cell-phone record's keepers. Thus Petitioner could not have been prejudiced under these circumstances.

In sum, the undersigned **FINDS** that Claim (3)(a) lacks merit, and that the Virginia State Court's rationale for denying this Claim when it was raised in Petitioner's state habeas petition "was not contrary to federal law, nor did it involve an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence." *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at *2 (E.D. Va. Mar. 30, 2010). Accordingly, the undersigned **RECOMMENDS** that Claim (3)(a) be **DISMISSED**.

E.   Failure to Use the Photograph of Thomas Sleeping as Evidence

In Claim (2)(a), Petitioner asserts that Defense Counsel was ineffective for failing to develop and present evidence of a cell-phone photograph of Brandon Thomas asleep in Bobbi Jo Bell's bed. Petitioner argues that presenting the evidence of the photograph would allow jurors to see an example of how Thomas's DNA could have gotten into the trailer. ECF No. 13 at 3-4. In order for Petitioner to be granted habeas relief on this Claim, he must demonstrate that Trial Counsel provided ineffective assistance of counsel which fell below the permissible minimum level of effectiveness by failing to present the photograph as evidence, and that the failure to present the photograph as evidence prejudiced Petitioner, such that the outcome likely would have been different.   Consideration of this Claim necessitates rejection of the same under both *Strickland* prongs, and it was not unreasonable for the Virginia State Court to do so.

There is a "strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington v. Richter*, 562 U.S. 86, 109 (2011). Moreover, no one contested the Petitioner's relationship with Bell. At trial, a DNA expert testified that Petitioner's DNA could have been left on the victim's pillow for months.  Trial Tr. vol. 4, 97. Additionally, the expert testified that finding the Petitioner's DNA was present at the scene did not reveal at what time the DNA had been left there—it may have been present from

some encounter months earlier. Trial Tr. vol. 4, 105. In light of the DNA testimony, Defense Counsel could have reasonably decided to exclude the photographic evidence because it served little purpose. Consequently, this Claim fails under *Strickland's* performance prong.

Even assuming *arguendo*, that Trial Counsel's performance fell below the acceptable level of effectiveness by failing to use the photograph as evidence (which the undersigned has already deemed unwarranted) Petitioner cannot establish *Strickland's* prejudice prong, because it is not reasonably likely the outcome would have changed. *See Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam); *Strickland*, 466 U.S. at 693, 696-97). In Petitioner's Opposition to Respondent's Motion to Dismiss, he appears to argue that showing the photograph to the jury would have given the jury a different idea of why his DNA was found at the scene. ECF No. 13 at 4. However, Petitioner here has failed to demonstrate or articulate how the trial's outcome would have been different had Trial Counsel decided to use the photograph as evidence at trial. No one contested that the victim and the Petitioner had previous history and the experts testified that the DNA could have been left in the trailer months before the the victim's death. Trial Tr. vol. 4, 105. As such, Petitioner could not have been prejudiced under these circumstances.

In sum, the undersigned **FINDS** that Claim (2)(a) lacks merit, and that the Virginia State Court's rationale for denying this Claim when it was raised in Petitioner's state habeas petition "was not contrary to federal law, nor did it involve an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence." *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at *2 (E.D. Va. Mar. 30, 2010). Accordingly, the undersigned **RECOMMENDS** that Claim (2)(a) be **DISMISSED**.

### F.  Failure to Impeach Witness Vanstory

In Claim (6)(a), Petitioner contends that Defense Counsel was ineffective for failing to use the March 7, 2014 letter to impeach witness Don Vanstory.  *See* ECF No. 1 at 31.  Claim (9)(a) asserts that Defense Counsel failed to present evidence of promises of immunity for Don Vanstory at trial and failed to rebut Vanstory's testimony that he did not change his story because of the promise of leniency.  *See* ECF No. 1 at 31.  In order for Petitioner to be granted habeas relief on these Claims, he must demonstrate that Trial Counsel provided ineffective assistance of counsel which fell below the permissible minimum level of effectiveness by failing to present evidence of promises of leniency and rebutting Vanstory's testimony, and that failure to do so prejudiced Petitioner, such that the outcome likely would have been different.  Consideration of these Claims requires rejection under *Strickland*, and the Virginia State Court's decision to do so was not unreasonable.

Regarding Claims (6)(a) and (9)(a) Petitioner argues that Defense Counsel was ineffective for failing to use a letter sent by Assistant Commonwealth's Attorney to witness Don Vanstory promising leniency in exchange for truthful testimony at trial as well as failing to present evidence of promises of immunity.  *See* ECF No. 1 at 31.  However, at trial the letter was referenced during direct examination of Vanstory.  *See* Trial Tr. vol. 3, 46-47 (**Trial prosecutor:** "And subsequent to all of the interviews, do you remember your attorney receiving a letter from our office? . . . I'll show that to you.  Could you identify that?" **Vanstory:**  This was faxed to my attorney. . . this is after I already gave all the statements.").  Vanstory testified that he only received the letter promising immunity *after* he told detectives the truth.  *See* Trial Tr. vol. 3, 46-47.

Instead of using the letter to impeach Vanstory, Defense Counsel chose to use a videotape of an interview between Detective Williams and Vanstory on October 13, 2010.  Defense Counsel

36

played the entire video for the jury. Trial Tr. vol. 3, 65. After the video was played, Defense

Counsel questioned Vanstory about the interaction. *See* Trial Tr. vol. 3, 68-69: ("**Defense counsel:**

Did they tell you that if you were worried about other charges, other crimes you might have

committed for which you've not been arrested yet?" and **Defense Counsel:** "Now isn't it true that

before you changed your story you insisted on immunity from prosecution, didn't you? **Petitioner**:

"I don't recall that, sir.").

It also appears that at trial, Defense Counsel attempted to question Vanstory regarding

some sort of immunity promised *before* he changed his story. But Vanstory only testified that

detectives told him they were more concerned with the murder investigation than other crimes

Vanstory may have committed in the past.[7] Trial Tr. vol. 3, 66-67. Choosing how to examine a

witness is a tactical matter and not subject to deeper analysis on review. *Sallie v. North Carolina*,

587 F.2d 636, 640 (4th Cir. 1974). "Counsel is not ineffective merely because he overlooks one

strategy while vigilantly pursuing another." Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987).

Defense Counsel vigorously cross-examined Vanstory in an attempt to impeach his testimony.

Trial Tr. vol. 3, 61-82. Further, the "failure of the strategy to produce an acquittal does not mean

that it was incompetent." *Jackson v. United States*, 473 F. Supp. 2d. 640, 646 (D. Md. 2006).

"Simply because counsel's questions did not lead the jury to discount witness testimony does not

---

[7] Assistant Commonwealth's Attorney Gobble acknowledged this in his sworn affidavit explaining:

> [a]t most, when members of the Chesterfield County Police Department were
> conducting interviews of witnesses in this matter, they expressed that they were
> more concerned with investigating the homicide than whatever crimes the
> witnesses previously committed or whether they had provided drugs to the victim
> prior to her death or committed alleged crimes with the victim or the defendant in
> the past.

S.R., Respondent's Exh. 5 at 3.

37

render counsel's performance unreasonable." *Blair v. United States*, No. PJM 14-766, 2016 WL 6569064, at *5 (D. Md. 2016).

Additionally, Defense Counsel may have wanted to avoid drawing extra attention to the letter. First, the letter offering immunity was sent *after* Vanstory changed his testimony. *See* S.R., S.R., Respondent's Exh. 5 at 1. Thus, it cannot be argued that the promise of leniency came first and Vanstory subsequently changed his mind.[8] Next, the letter emphasizes that Vanstory's testimony at trial needed to be fully cooperative by explaining his story "fully and truthfully". *See* S.R., Respondent's Exh. 5 at 4. The letter also explained that Vanstory could be prosecuted if any evidence emerged that the testimony was "untruthful or deceitful". *See* S.R., Respondent's Exh. 5 at 5. If Defense Counsel had focused on the letter as the avenue for impeachment, the truthfulness requirement could have been used against the defense's case. Because of this, Claims (6)(a) and (9)(a) are without merit and are rejected under *Strickland.*

Even assuming *arguendo*, that Trial Counsel's performance fell below the acceptable level of effectiveness by failing to use the letter to impeach Vanstory and failing to present evidence of immunity (which the undersigned has already deemed unwarranted) Petitioner cannot establish *Strickland*'s prejudice prong, because it is not reasonably likely the outcome would have changed. *See Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Wong v. Belmontes,* 558 U.S. 15, 27 (2009) (per curiam); *Strickland,* 466 U.S. at 693, 696-97). In Petitioner's Opposition to Respondent's Motion to Dismiss, he appears to argue that using the letter at trial would have impeached Vanstory and shown Vanstory's inconsistent statements in front of the jury. ECF No. 13 at 2-3. However, Petitioner here has failed to demonstrate or articulate how the trial's outcome

---

[8] Assistant Commonwealth's Attorney Gobble explains in his affidavit that Vanstory's alibi was refuted by security footage that showed Vanstory alone, without the Petitioner, as well as cell phone records that revealed repeated calls from Vanstory to Thomas when Vanstory had initially told detectives that they were in the same room. S.R., Respondent's Exh. 5 at 2.

would have been different had Trial Counsel used the letter as evidence at trial. The trial record reveals that Vanstory freely admitted his story had changed and Defense Counsel questioned Vanstory on why that was. *See* Trial Tr. vol. 3, 44-47. Subsequently, Petitioner could not have been prejudiced under these circumstances.

In sum, the undersigned **FINDS** that Claims (6)(a) and (9)(a) lack merit, and that the Virginia State Court's rationale for denying this Claim when it was raised in Petitioner's state habeas petition "was not contrary to federal law, nor did it involve an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence." *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at *2 (E.D. Va. Mar. 30, 2010). Accordingly, the undersigned **RECOMMENDS** that Claim (6)(a) and (9)(a) be **DISMISSED**.

G.  Failure to Present Evidence of Promises of Leniency to Other Witness

In Claim (13)(a), Petitioner argues that Defense Counsel failed to proffer available evidence regarding promises of immunity made by the Commonwealth to witnesses William Jordan, Mary Schott, and Marcus Palmer. *See* ECF No. 1 at 34. In order for Petitioner to be granted habeas relief on this Claim, he must demonstrate that Trial Counsel provided ineffective assistance of counsel which fell below the permissible minimum level of effectiveness by failing to present evidence of promises of leniency, and that the failure to make such a presentation prejudiced Petitioner such that the outcome likely would have been different. Consideration of this Claim requires rejection under *Strickland*, and the Virginia State Court's decision to do so was not unreasonable.

Petitioner's assertions in Claim (13)(a) do not sustain a habeas claim under *Strickland*. The trial prosecutor submitted a sworn statement that no promises of immunity or leniency were ever made to these witnesses. *See* S.R., Respondent's Exh. In the statement he explained that defense

counsel was provided discovery "akin to open file discovery." S.R., Respondent's Exh. 5 at 1. Every witness statement was copied and provided to defense counsel, as was every other piece of potential evidence, regardless of whether it was inculpatory or exculpatory. *See* S.R., Respondent's Exh. 5 at 2. As there was no available immunity evidence to proffer, defense counsel cannot be ineffective for failing to raise it. It cannot be overstated that "[f]ailure to raise a meritless argument can never amount to ineffective assistance." *Juniper v. Zook*, 117 F. Supp. 3d 780, 791 (E.D. Va. 2015) (quoting *Moore v. United States*, 934 F.Supp. 724, 731 (E.D. Va. 1996)).

It appears that, at trial, Defense Counsel attempted to question the witnesses, beginning with William Jordan, on whether the Commonwealth had made promises of immunity for unrelated, uncharged crimes, even though there was no direct evidence of leniency available. *See* Trial Tr. vol. 2, 59-60 (**Trial Counsel**: "What kinds of drugs would you give Ms. Bell?); Trial Tr. vol. 2, 59-60 (**Trial Counsel:** "You have had—you also told the police about other drug activities you've been involved in, right?"). Defense Counsel attempted to argue that questions regarding past criminal activity should be allowed under *Giglio*, because the witnesses were not being prosecuted for the prior illegal activities to which they had admitted. *See* Trial Tr. vol. 2 61-62 (**Trial Counsel**: "I'm going under *Giglio*, but I don't think these people are being prosecuted for these crimes they're admitting to. And under *Giglio*, that certainly is impeachment. . . [t]hey're not being prosecuted, they're getting a walk and I would submit that that's impeachment under *Giglio*."). Prosecutor Gobble argued, and the trial judge agreed, that the proper way to question a witness regarding promises of immunity is to only ask if the witness was promised anything for their testimony. *See* Trial Tr. vol. 2, 62-63 (**Trial prosecutor:** "Judge, I think the proper way of attempting to impeach someone concerning their past history, or any promises the Commonwealth may have made. . . is were you promised anything for your testimony here today and are you

40

expecting anything from your testimony here today?"). Prosecutor Gobble also stated during the trial that he had not promised Jordan, Schott, or Palmer immunity or leniency for their testimony. Trial Tr. vol. 2, 62.

Defense Counsel attempted a similar line questioning for witness Mary Schott. *See* Trial Tr. vol. 2, 96 (**Trial Counsel:** "Without telling me what, when you were interviewed by the police, did you tell them that you had engaged in any illegal activities, such as drugs? Don't tell me what was said, just did you tell them you were involved in illegal activities like drugs, yes or no?"). Prosecutor Gobble objected and the objection was sustained by the trial judge. *Id.*

Regarding the testimony of Palmer, Defense Counsel again argued that under *Giglio* he was allowed to question past criminal acts. Trial Tr. vol. 2, 164 (**Trial Counsel:** "It's permitted to offer this evidence [of previous criminal acts] through direct evidence or circumstantial evidence. If he divulged criminal activity, whatever it is, I was going to ask him what it was, to the police and to the Commonwealth attorney and they are not prosecuting him, that is circumstantial evidence of an understanding that he is not going to be prosecuted."). The trial judge overruled the objection. Trial Tr. vol. 2, 96-97.

Not only did the trial prosecutor submit a sworn statement providing that there were not offers of immunity to Schott, Palmer, or Jordan, Defense Counsel also questioned the three witnesses on their interactions with police involving promises of leniency and nothing was revealed. There was simply no available evidence of a promise of leniency to Schott, Palmer, and Jordan. Because there was no available evidence of a promise of leniency, counsel cannot be ineffective for failing to proffer that evidence. Consideration of this Claim necessitates rejection of under *Strickland*.

41

Even assuming *arguendo*, that Trial Counsel's performance fell below the acceptable level of effectiveness by failing to present evidence which does not appear to exist (which the undersigned has already deemed unwarranted) Petitioner cannot establish *Strickland*'s prejudice prong, because it is not reasonably likely the outcome would have changed. *See Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam); *Strickland*, 466 U.S. at 693, 696-97). In Petitioner's state habeas petition he appears to argue "[t]he cumulative effect of defense counsel's performance. . . prejudicially affected Mr. Thomas' substantial rights so as to deprive him of a fair trial." ECF No. 1 at 38. However, Petitioner here has failed to articulate or demonstrate how the trial's outcome would have been different had Trial Counsel proffered evidence of promises of immunity. There was no evidence of impeachment information that could have been proffered so Trial Counsel could not have been ineffective for failing to proffer it. *See* S.R., Respondent's Exh. 5 at 1. Consequently, Petitioner could not have been prejudiced under these circumstances.

In sum, the undersigned **FINDS** that Claim (13)(a) lacks merit, and that the Virginia State Court's rationale for denying this Claim when it was raised in Petitioner's state habeas petition "was not contrary to federal law, nor did it involve an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence." *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at \*2 (E.D. Va. Mar. 30, 2010). Accordingly, the undersigned **RECOMMENDS** that Claim (13)(a) be **DISMISSED.**

H.  Failure to Preserve Petitioner's Rights Under *Brady v. Maryland*

In Claim (12)(a) Petitioner argues that Defense Counsel was ineffective for failing to properly object and preserve the Petitioner's right under *Brady v. Maryland* when the Commonwealth failed to disclose or suppressed impeachment evidence that officers from the

42

Chesterfield Police Department made promises of immunity to not prosecute William Jordan, Mary Schott, Marcus Palmer, and other witnesses. *See* ECF No. 1 at 31. Under *Brady*, failure to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). Evidence is "favorable" either when it helps prove innocence or when it can be used to impeach the Government's witnesses. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Consideration of this Claim requires rejection under *Strickland*, and the Virginia State Court's decision to do so was not unreasonable.

As explained *supra,* the trial prosecutor offered a sworn statement that no promises of immunity or leniency were ever made to witnesses, with the sole exception of Don Vanstory. *See* section II, C. *supra.* In the statement he explained that defense counsel was provided discovery "akin to open file discovery." *See* S.R., Respondent's Exh. 5 at 1. Every witness statement was copied and provided to defense counsel, as was every other piece of potential evidence, regardless of whether it was inculpatory or exculpatory. *See* S.R., Respondent's Exh. 5 at 2. The problem with Petitioner's *Brady* claim is that there is no evidence that Chesterfield Police Detectives offered immunity or made promises of leniency to William Jordan, Mary Schott, Marcus Palmer, and other witnesses. As such, this Claim is without merit.

Even assuming *arguendo*, that Trial Counsel's performance fell below the acceptable level of effectiveness by failing to properly object to preserve Petitioner's rights under *Brady v. Maryland* (which the undersigned has already deemed unwarranted) Petitioner cannot establish *Strickland*'s prejudice prong, because it is not reasonably likely the outcome would have changed. *See Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Wong v. Belmontes,* 558 U.S. 15, 27 (2009) (per curiam); *Strickland,* 466 U.S. at 693, 696-97). In Petitioner's state habeas petition

he appears to argue that "[t]he cumulative effect of defense counsel's performance. . . prejudicially affected Mr. Thomas' substantial rights so as to deprive him of a fair trial." ECF No. 1 at 38. Petitioner here has failed to demonstrate how the trial's outcome would have been different had Trial Counsel properly objected and preserved Petitioner's rights. There was no evidence of impeachment evidence so there was no valid *Brady* objection to preserve. *See* S.R., Respondent's Exh. 5 at 1. As such, Petitioner could not have been prejudiced under these circumstances.

In sum, the undersigned **FINDS** that Claim (12)(a) lacks merit, and that the Virginia State Court's rationale for denying this Claim when it was raised in Petitioner's state habeas petition "was not contrary to federal law, nor did it involve an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence." *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at *2 (E.D. Va. Mar. 30, 2010). Accordingly, the undersigned **RECOMMENDS** that Claim (12)(a) be **DISMISSED.**

I.   Failure to Challenge Sufficiency of the Evidence

In Claim (7)(a), Petitioner contends that Defense Counsel was ineffective for failing to challenge the sufficiency of the evidence which established guilt. *See* ECF No. 1 at 12. The trial record belies this claim. Defense Counsel did challenge the sufficiency of the evidence in a motion to strike at both the conclusion of the Commonwealth's case and at the conclusion of all the evidence. Trial Tr. vol. 4, 139, 190. In the first motion to strike, Defense Counsel argued that the evidence was circumstantial and insufficient for a conviction. Trial Tr. vol. 4, 141. Specifically, Defense Counsel argued that although the Commonwealth is entitled to argue certain inferences, those inferences must be consistent with guilt and inconsistent with innocence and probability of guilt is not enough. Trial Tr. vol. 4, 141. Defense Counsel argued that until the other theories proffered could be disproved by the Commonwealth, the Commonwealth could not meet its

standard of proof and therefore could not overcome the presumption of innocence. Trial Tr. vol. 4, 143. The trial judge rejected this, siding with the Commonwealth's proffer that Don Vanstory's testimony, supported by other circumstantial evidence, met its standard of proof, and the decision of innocence or guilt should be left to the jury. Trial Tr. vol. 4, 145. In the second motion to strike, Defense Counsel again submitted that the Commonwealth had only offered circumstantial evidence which did not prove the Petitioner's guilt beyond a reasonable doubt. This motion was also denied. Trial Tr. vol. 4, 190-91. Consideration of this Claim requires rejection under *Strickland*, and the Virginia State Court's decision to do so was not unreasonable.

Petitioner argues that Trial Counsel should have challenged the sufficiency of the evidence based on the totality of the evidence, as opposed to the circumstantial evidence challenge that counsel did raise. However, counsel "need not raise every possible claim to meet the constitutional standard of effectiveness." *United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014). Counsel also raised doubts about the validity and weight of the circumstantial evidence in closing statements, asking the jury to consider the credibility of the witnesses and how they behaved during questioning, and to really thoughtfully review all the evidence. Trial Tr. vol. 4, 231-258.

Even assuming *arguendo*, that Trial Counsel's performance fell below the acceptable level of effectiveness by failing to challenge the sufficiency of the evidence (which the undersigned has already deemed unwarranted) Petitioner cannot establish *Strickland*'s prejudice prong, because it is not reasonably likely the outcome would have changed. *See Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Wong v. Belmontes,* 558 U.S. 15, 27 (2009) (per curiam); *Strickland,* 466 U.S. at 693, 696-97). In Petitioner's state habeas petition he appears to argue that "[t]he cumulative effect of defense counsel's performance. . . prejudicially affected Mr. Thomas' substantial rights so as to deprive him of a fair trial." ECF No. 1 at 38. However,

45

Petitioner here has failed to demonstrate how the trial's outcome would have been different had Trial Counsel used different grounds to challenge the sufficiency of the evidence. Thus Petitioner could not have been prejudiced under these circumstances.

In sum, the undersigned **FINDS** that Claim (7)(a) lacks merit, and that the Virginia State Court's rationale for denying this Claim when it was raised in Petitioner's state habeas petition "was not contrary to federal law, nor did it involve an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence." *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at \*2 (E.D. Va. Mar. 30, 2010). Accordingly, the undersigned **RECOMMENDS** that Claim (7)(a) be **DISMISSED**.

### III.  RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss, ECF No. 8, be **GRANTED**, and the Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

### IV.  REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2.  A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the

above findings and recommendations will result in a waiver of the right to appeal from a judgment

of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985);

*Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v.*

*Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to *pro se*

Petitioner and to counsel for Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
June 30, 2020

47